## APPEAL OF WALL & OCHS, INC.

Docket No. 3857.    Decided September 27, 1926.

The record cards of a corporation engaged in business as a dispensing optician, upon which cards there is written or drawn specific data and measurements from which new lenses and frames may be made, are tangible property, and the value thereof may be included in invested capital.

*William M. Williams, Esq., Earl B. Breeding, Esq.,* and *Charles S. Edmunds, Esq.,* for the petitioner.
*J. Arthur Adams, Esq.,* for the Commissioner.

This petition is from the determination of a deficiency in income and profits taxes for the year 1918 in the sum of $4,835.36. The errors alleged are:

1. The Commissioner has improperly classified for invested capital purposes certain record cards as intangible property.

2. The Commissioner has disallowed certain increases of salaries paid in 1917 to the employees of the petitioner for the year 1917, aggregating $14,300, which should be allowed as a deduction for the year 1918.

### FINDINGS OF FACT.

Petitioner is a corporation organized under the laws of the Commonwealth of Pennsylvania. Prior to the year 1903 Charles F. Wall was engaged in the business of a dispensing optician. He owned certain assets which he used in his business, including machinery, merchandise, tools, patents, and record cards.

In 1903 Charles F. Wall decided to incorporate his business and on January 23, 1906, he transferred his business, including machinery, merchandise, tools, patents, and record cards, to the corporation of Wall & Ochs, Inc., and received in payment therefor its total authorized capital stock of $100,000, consisting of 1,000 shares of the par value of $100 each.

The record cards transferred to the corporation were 62,810 in number and were of light cardboard, and thereon were the facial measurements of each patient who brought a prescription to be filled. Such facial measurements included the inter-pupillary distance for far and near use, the shape of the nose, the height at which lenses are to be set, the distance in or out, the length and a diagram of spectacle temples, and the size and shape of lenses. The cards also carried a copy of the original prescription which had been furnished to the patient by the physician-oculist. These facial measurements

of the patient are made by employees or officers of the petitioner with specially constructed instruments. There is also indicated on the cards the patient's credit standing. These record cards are maintained as a permanent record of the petitioner and are used by him in filling additional orders for the same glasses, or the facial measurements are used for filling prescriptions requiring the same frames but other lenses. The actual cash value of these record cards when paid in to the corporation for stock was not less than $62,000.

During the year 1917 the three officers and only directors of the taxpayer were Charles F. Wall, William L. Wall, and J. Harry Bowers, and they were also the only stockholders. During the year 1917 they met and discussed the question of salaries for each of them for 1917 and subsequent years, and during 1917 determined at a meeting at which all three were present that their compensation for 1917 and subsequent years should be as follows: Charles F. Wall, $11,000; William L. Wall, $8,500; and J. Harry Bowers, $8,000. The petitioner during 1917 credited and made available to its officers the following salaries: Charles F. Wall, $11,000; William F. Wall, $8,500; and J. Harry Bowers, $8,000. Each of the officers accounted for the sums of $11,000, $8,500, and $8,000, respectively, in their individual tax returns for the years 1917 and 1918. The books of account of the petitioner were kept and maintained upon the accrual basis. The petitioner, by formal resolution on January 29, 1918, adopted and ratified the payment of salaries to the three officers for the year 1917.

### OPINION.

MILLIKEN: The first issue relates to the computation of invested capital for the calendar year 1918. The asset in question is the permanent record card used by the petitioner in its business. The record evidences no dispute as to the fact that the record cards are and have been the property of the petitioner since 1906 and that the stock of the corporation was specifically issued therefor. The Commissioner has classified the record cards as intangible property and allowed the value of the cards for invested capital purposes subject to the statutory limitation. The petitioner contends that the record cards are tangible property and should be subjected to no limitation for invested capital purposes. The question to be determined by us, therefore, is whether the record cards are tangible or intangible property. Apparently, there is no dispute as to the value of the asset, but if there be such, the testimony of the experts qualified to pass upon their value convinces us that the cards had a value of not less than $62,000.

The business of the petitioner is the filling of the prescriptions of the oculists as brought to them by the patient. It does not test the eyes. It carries no stock. Its business is to make to order glasses

conforming to the individual requirements of each customer. The lenses are ground in strict conformity with the prescription of the oculists. It is the duty of the petitioner to make such special adjustments of the frames as best suits the facial measurements and requirements of each customer. The petitioner preserves by means of the record cards, full data and history relating to each customer and files these cards for safe keeping in a vault. As customers come to them for additional services the record card is used for the purpose of supplying the measurements necessary for giving the service. The evidence abundantly proves their value and continued use in the business.

The terms "tangible property" and "intangible property" have so many different meanings and shades of meaning that their significance can be gathered, for the purposes of this inquiry, only from the statute itself. Congress, in section 325 (a) of the Revenue Act of 1918, has laid down certain specific definitions. The asset here in question does not fall into any of the specific definitions enumerated. The Commissioner contends that the asset in question is intangible property. It seems to us the term "intangible property" as used in the statute should be construed to mean property of a character similar to patents, good will, and the specific kinds of property enumerated in the same clause. With respect to property not clearly of such a character, it is our duty to decide whether it is tangible or intangible.

The record cards are not similar in character to patents, copyrights, secret processes and formulæ, trade-marks, trade-brands, or franchises. It is the insistence of the Commissioner that the cards are good will. The good will of the business does not ordinarily attach to a physical asset. Good will usually results from and is built up from the transactions which the customer has with the merchant, the excellence of the article manufactured and sold, the integrity and courtesy of the merchant and the good opinion which the customer has of the merchant and his wares. The record cards can not be measured exclusively by the last-mentioned standards. The article sold may not have been satisfactory, or the integrity of the merchant may have been questioned, in which event the record cards would not supply the good will that would have been lacking. The cards remained as a continuing and permanent asset, regardless of the good will of the business, and could possibly have been used by another oculist meriting more fully the good will of his customers, with a resultant larger profit from the optical business, or perchance, with the reverse situation obtaining. The cards were fixed assets, while the good will of the firm owning them depended upon the factors hereinbefore mentioned. Indeed, the record cards served a purpose similar to the patterns and drawings of the manufacturer.

The record cards contained the minute specifications and details from which additional glasses could be and were supplied. Such being the case, we must hold that the cards in question were tangible property.

The second issue relates to salaries, or additional compensation which the petitioner seeks to deduct for the calendar year 1918. During the year 1917 the three officers, directors and stockholders had a meeting and determined that the salaries for the year 1917, which they deemed to be reasonable, should be as follows: Charles F. Wall, $11,000; William L. Wall, $8,500; and J. Harry Bowers, $8,000. The corporation credited the salaries of the individuals named and they reported the same in their individual tax returns for the year 1917. The petitioner maintained its books of account and reported its income on the accrual basis. It is claimed, although the record is silent as to the reason, that the Commissioner disallowed the deductions for 1917, whereupon the petitioner seeks the deduction in the return filed for the calendar year 1918. It is also in evidence that the petitioner claimed, and was allowed, for the calendar year 1918, salary deductions for that year in the amount of $27,500, representing salary to Charles F. Wall of $11,000; William L. Wall of $8,500; and J. Harry Bowers of $8,000. We are of the opinion that the taxpayer is not entitled to the additional deduction claimed. The deductions pertain to the calendar year 1917. However, we have before us only the year 1918 and make no specific findings other than as concerns the deduction for the year 1918. The determination of the Commissioner relative to the second issue is approved.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*

LANSDON, MARQUETTE, and STERNHAGEN dissent.